## REGENTS OF UNIVERSITY SYSTEM OF GEORGIA v. PAGE.

### No. 7784.

Circuit Court of Appeals, Fifth Circuit.
Jan. 20, 1936.

HUTCHESON, Circuit Judge, dissenting.

Marion Smith and M. E. Kilpatrick, both of Atlanta, Ga., for appellant.

M. H. Eustace, Sp. Asst. to Atty. Gen., and M. Neil Andrews, Asst. U. S. Atty., of Atlanta, Ga., for appellee.

Before FOSTER and HUTCHESON, Circuit Judges, and HOLMES, District Judge.

HOLMES, District Judge.

This suit in equity was commenced in the District Court of Northern Georgia, by the Board of Regents of the University System of Georgia against the Collector of Internal Revenue, to restrain the collection of taxes upon the payment of admissions to athletic games, the proceeds of which inure wholly to the University of Georgia and the Georgia School of Technology, branches of said system. The appellant was created by an act of the Legislature of Georgia, in 1931 (Laws Ga. 1931, p. 20) for the purpose of having supervision of the public higher institutions of learning in the state, among which were said University and School. From the bill of complaint, its amendments, and exhibits, it appears that during the time involved in this controversy athletic games or exhibitions, participated in by students, were held upon the athletic fields of each of said institutions. The public was admitted to such

contests upon payment of the prescribed price of admission; but whether the amount of admission tax imposed by section 500 of the Revenue Act of 1926, 44 Stat. 91, as amended by section 711 of the Revenue Act of 1932, 47 Stat. 271, was added to the price, is a disputed issue to be determined from the amended petition and its exhibits. Each admission ticket had printed on its face the price thereof, the amount of federal tax, and the total. The full amount shown on the face of each ticket was collected from the purchaser. On the back of each ticket was printed the following: "The University of Georgia, being an instrumentality of the government of the State of Georgia, contends that it is not liable for any admissions tax. The amount, stated as a tax is so stated because the University is required to do so by Treasury regulations pending a decision as to its liability in this respect. This amount is collected by the University as a part of the admission and will be retained as such unless it is finally determined that the University is itself liable for the tax," the same notice, except for the name "School of Technology," being placed on tickets of the School of Technology.

The Commissioner of Internal Revenue having ruled that state universities must collect the tax on admissions to football games, the appellant made a return of admissions so collected, paid an amount thereon as a tax to the collector for the proper district (such amount not being involved in the present suit), and then filed a claim for refund to cover the amount, but the claim was denied on the ground, among others, that the tax had not been imposed on the claimant, but on others from whom the admissions were collected, and that, not being the taxpayer, appellant could not contest the payment. Warrants of distress and notices of levy having been served by appellee upon the appellant for subsequent taxes, alleged to have been collected during the months of September and October, 1934, from the sale of admissions to games played at the University of Georgia and the School of Technology, and 10 per cent. of the amounts so collected and deposited in local banks having been levied upon by the collector, the appellant filed its bill praying that the appellee be restrained from proceeding further with said attempt to collect said taxes, for a declaratory judgment that no taxes were due, and for general relief.

The court below issued its rule to show cause why the relief prayed for in the bill should not be granted, to which appellee responded by filing a motion to dismiss the bill. This motion was sustained and a decree of dismissal followed, the court holding, as contended by appellee, that an injunction is prohibited by section 3224 of the Revised Statutes (26 U.S.C.A. § 1543); that the United States, which is the real party in interest, has not consented to the determination of the question involved by declaratory judgment or decree; that the promotion of athletic games where admission fees are charged is not an essentially governmental function; and that it was not necessary to decide whether the state could be required to act as agent to collect the tax since it had voluntarily done so.

The contentions of appellant are that it is a department of the state government, performing a sovereign function; that the University of Georgia and School of Technology have as parts of their educational curricula athletic departments for the instruction of their students in physical training and education; that the athletic events for which the public is charged admission, which include athletic contests between students of the University of Georgia, the School of Technology, and other colleges, are parts of their educational program; that all funds derived from the sale of such admissions are the property of appellant; and that such admissions are exempt from the payment of the federal admissions tax. The appellant further claims that the amounts for which warrants of distress have been issued are not for taxes assessed against a taxpayer, but for items of a debt owing by an alleged agent; that the money or choses in action which have been levied upon by distraint are not the property of the taxpayer; that the United States government has no lien thereon and no right to seize it by summary process; and that section 3224 of the Revised Statutes does not apply because of the special circumstances which call peculiarly for the interposition of equitable remedies in order to avoid irreparable injury.

■ We think the court erred in holding that the appellant had voluntarily acted as agent of the federal government in collecting the taxes. If the appellant acted as agent, it did so under coercion brought about by the fear of being mistaken in its expressed opinion that it could not be required to collect taxes for the federal government, and that no taxes were due, because the exhibitions, admissions to which

are sought to be taxed, were governmental functions of the state which the United States were without power to tax. The conduct of law-abiding citizens, relying upon constitutional rights but at the same time giving respectful though unwilling obedience to an act of Congress believed to be inapplicable or unconstitutional, should not be distorted into a voluntary assent to the very application of the statute which is being protested against and emphatically challenged. While vigorously denying at all times that any admission tax is due, the appellant first paid it and sought to recover it through administrative channels. This effort failed because the tax payable on admissions is an excise which is added to the price of admission and paid by the purchaser of the ticket. In the absence of a showing that the burden of the taxes was actually borne by it, appellant has no interest in the subject-matter of the controversy and cannot recover either by administrative claim for refund or action at law. United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859; Shannopin Country Club v. Heiner (D.C.) 2 F.(2d) 393; Lafayette Worsted Co. v. Page (D.C.) 6 F.(2d) 399, 400; Bunker Hill Country Club v. United States (Ct.Cl.) 9 F.Supp. 52; Wourdack v. Becker (C.C.A.) 55 F.(2d) 840, certiorari denied 286 U.S. 548, 52 S.Ct. 501, 76 L.Ed. 1285. The admission tax statute (44 Stat. 91, § 500, as amended) provides that the tax is "to be paid by the person paying for such admission." It further provides (44 Stat. 9, § 2) that "the term 'taxpayer' means any person subject to a tax imposed by this Act."

The only other recourse, except the one followed by appellant, was to disregard the law as construed by administrative officers, and to fail or refuse to comply with it and regulations promulgated thereunder by the Commissioner of Internal Revenue. This would have involved financial hazards and risks of criminal prosecutions which no prudent, law-abiding citizen should be required to incur. See section 500 (d) of the Revenue Act of 1926, 44 Stat. 91; section 3176, Revised Statutes, as amended by section 1103 of the Revenue Act of 1926, 44 Stat. 112; section 619 (d) of the Revenue Act of 1928, 45 Stat. 878; sections 502 (d), 1114, and 1123 of the Revenue Act of 1926, 44 Stat. 93, 116, 121; and section 3184 of the Revised Statutes of the United States (26 U.S.C.A. § 1545). The most pertinent provisions thereof are the following:

Section 500 (d). "Whoever sells an admission ticket or card on which the name of the vendor and price is not so printed, stamped, or written, or at a price in excess of the price so printed, stamped, or written thereon, is guilty of a misdemeanor, and upon conviction thereof shall be fined not more than $100.00." 44 Stat. 91, 92.

Section 1114 (b). "Any person required under this Act to collect, account for and pay over any tax imposed by this Act, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this Act or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution." 44 Stat. 116.

Section 1114 (f). "The term 'person' as used in this section includes an officer or employee of a corporation or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 44 Stat. 116, 117.

The course taken by appellant seems to us most appropriate. The money was collected by the respective athletic departments under an agreement with the purchasers that, if no tax was due by the University or School of Technology, the amounts so collected should be added to the price of admission and retained by the appellant. There was nothing unfair or illegal about such an agreement. It was one of which the United States could not reasonably complain. If the tax was due by appellant or it was legally required to collect the same, it is the duty of the collecting agent to pay it over; if the admissions were immune from federal taxation, there was no valid agency and certainly no obligation to pay anything over to the appellee. We find nothing in the conduct of the Board of Regents to estop it from standing upon its constitutional rights and asserting the invalidity or inapplicability of the alleged tax.

Let us now look at the remedy pursued by, and inquire what remedy is available to, appellee. If his contention is correct, the appellant voluntarily acted as agent in the collection of the tax and became the debtor of the United States. The money collected does not belong to the gov-

ernment; the title to it is in appellee. Nevertheless, treating the amounts claimed to be due as a tax, the Collector of Internal Revenue prepared and filed returns on behalf of appellant's athletic departments and, thereafter, admissions taxes in the respective amounts were duly assessed against them. Appellee then gave notice to and made demand of the respective departments for the payment of the admissions taxes so assessed on account thereof. Upon failure of such departments to pay as demanded, appellee issued his warrants of distraint, and on October 24, 1934, levied upon the bank accounts in which were deposited the funds alleged to have been collected as and for the tax on such admissions, and filed notices of liens thereon. As the appellant is not the taxpayer but merely an alleged debtor for money had and received (United States v. Johnston, 268 U.S. 220, 226, 45 S.Ct. 496, 69 L.Ed. 925), if the appellee is correct in his contention that the appellant voluntarily acted as agent in the collection of the admission taxes, the question immediately presents itself whether the collection of a debt against one other than a taxpayer may "be enforced through the secret findings and summary action of executive officers." Penalties against third parties, not taxpayers, may not be so enforced. Lipke v. Lederer, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061; Fontenot v. Accardo (C.C.A.5) 278 F. 871; Ledbetter v. Bailey (D.C.) 274 F. 375, 382; Middleton v. Mee (D.C.) 277 F. 492, 499; Pool v. Walsh (C.C.A.) 282 F. 620; Thorne v. Lynch (D.C.) 269 F. 995; Long v. Rasmussen (D.C.) 281 F. 236; Trinacia Real Estate Co. v. Clarke (D.C.) 34 F.(2d) 325; Livingston v. Becker (D.C.) 40 F.(2d) 673; Lion Coal Co. v. Anderson, Collector (C.C.A.) 62 F.(2d) 325; Hubbard Inv. Co. v. Brast (C.C.A.) 59 F.(2d) 709, 710. The power of Congress to provide for the collection of admissions taxes by assessment and warrant of distraint against the appellant may be conceded, provided the business engaged in is not an essentially governmental function; but there is no clear statutory authority for so doing, as in section 280 of the Revenue Act of 1926, 44 Stat. 61, dealing with the analogous liability of a transferee of the assets of a taxpayer. Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289.

■ In the present case, there is no special statute which authorizes the assessment by the commissioner against the appellant or its branches of admissions tax which it may have collected, and none which authorizes the collection thereof by seizure and sale of appellant's property under warrant of distraint. The assessment in this case by the commissioner was evidently made under section 3176 of Revised Statutes, as amended by section 619 (d) of the Revenue Act of 1928, c. 852, 45 Stat. 791 (U.S.C.Supp. VII., title 26, § 1524). The statute relied upon to authorize distraint for collection of admissions tax is section 1109 of the Revenue Act of 1926, 44 Stat. 114. No reference is made to admission taxes either in said section 3176 of Revised Statutes, as amended, or in said section 1109 of the Revenue Act of 1926; but it is not necessary for us to construe these statutes because (if it be conceded that assessment and collection by summary process may ordinarily be made), nevertheless, we are of opinion that appellant has stated a case for equitable relief. Asserting in the bill that it is exempt from the tax, and the duty to collect it, for the reasons stated; and being unable to pay the tax and sue for its recovery, or otherwise to test its liability with reference thereto—the appellant is entitled to equitable relief by injunction to prevent the threatened sale of its property for a tax it does not owe or for a debt which it disputes and has never had an opportunity to deny in court. The enactment of the Act of March 2, 1867, 14 Stat. 475, which became Rev.St. § 3224 (26 U.S. C.A. § 1543), was merely declaratory of the prior rule that courts of equity will not restrain the collection of a tax upon the sole ground of its illegality. The rule is not absolute, and is inapplicable in extraordinary and exceptional circumstances. The absence of a plain, adequate, and complete remedy at law to pay the illegal tax and sue to recover it raises an independent ground to support injunctive relief in equity. Such ancient equitable jurisdiction was not abrogated by the above statute which is construed in harmony with the former equitable doctrine. Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422.

■ The petition alleges the incorporation of appellant as a governmental instrumentality for educational purposes; the promotion of physical training as an integral part of its educational activities, including intercollegiate athletic contests, such as football; and its collection of fees for ad-

mission to such athletic contests; but it denies that it "collected any tax for the defendant or for the federal government at any time." There is no averment in the petition which expressly or impliedly traverses these allegations, particularly the one that it has collected no tax for the federal government. It is contended that the foregoing averments, and others of similar import set forth in the petition, are conclusions of law and not allegations of fact. We do not so construe them. We realize that it is often difficult to distinguish in pleadings between allegations of fact and conclusions of law; and we are mindful of the rule that, in case of doubt or ambiguity, the petition should be construed most strongly against the pleader; but we find therein no admission of having collected, or of liability to collect, the tax, and no allegation of conduct on the part of appellant or its branches which estops them from denying having voluntarily acted as agent of the federal government in the collection thereof. It is further repeatedly alleged in the petition that in collecting the admission fees the Board of Regents was acting for the state of Georgia in performing a purely governmental function, namely, the education of its youth. We are unable to say, from other allegations in the petition or from common knowledge, that these are either mere conclusions of law or erroneous statements of fact. They are clearly intended as factual averments. The language of the pleader is positive and unambiguous. We think the issues as to the collection of taxes, the governmental character of the exhibitions, and the incidental relation of the fees charged for admissions thereto, should be met by an answer to the petition. The plaintiff is required to make only a short and simple statement of the ultimate facts upon which relief is asked, omitting any mere statement of evidence. Equity Rule 25, 28 U.S.C.A. following section 723. General certainty is sufficient. It is not necessary to aver all the minute circumstances which may be proven in support of the general statement or charge in the bill. St. Louis v. Knapp, S. & Co., 104 U.S. 658, 661, 26 L.Ed. 883.

■ According to the contention of appellee, the courts are closed to appellant, in most difficult circumstances. It must either surrender its claims of immunity from federal taxation or incur the risk of committing a felony through its officers or employees. It cannot pay the alleged tax and seek a refund, because the burden of payment is borne by the purchasers of the tickets. For the same reason it cannot recover in an action at law. Yet it is clear from any view of the case that appellant itself owes no tax. Its sole liability, if any, is a duty to collect and faithfully account for it. It denies having made any collection thereof, while admitting having set aside out of its admission fees an amount, at least, equal to the taxes claimed. The motion to dismiss admits every allegation of fact in the petition which is well pleaded. Like a demurrer, the motion must be based entirely upon facts stated in the bill of complaint. It cannot invoke in its support any fact whatever which is not contained therein, except one of which the court takes judicial knowledge.

■ We deem it premature at this time to make any announcement on the asserted claim of liability for the tax or obligation to collect it. A constitutional question of great importance is involved. The correct answer to it is more aptly to be found in a painstaking examination of the facts and circumstances in evidence than in hair-splitting technicalities of pleading, however necessary such rules may be ordinarily. The law arises out of the facts in all cases, but, in determining what instrumentalities of a state are exempt from taxation by the federal government, the maxim requires special emphasis. Legal formulas are helpful to classify state activities, but in close cases it becomes necessary to examine the particular facts to determine whether the special instrumentality falls within the category of private business subject to tax or governmental function exempt therefrom. Under our dual system of constitutional government the limitation upon the taxing power must be given a practical construction so as not "to impair either the taxing power of the government imposing the tax * * * or the appropriate exercise of the functions of the government affected by it." Metcalf & Eddy v. Mitchell, 269 U.S. 514, 524, 46 S.Ct. 172, 174, 70 L.Ed. 384; South Carolina v. United States, 199 U.S. 437, 461, 26 S.Ct. 110, 50 L.Ed. 261, 4 Ann.Cas. 737; Flint v. Stone Tracy Co., 220 U.S. 107, 172, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312. See, also, Fox Film Corporation v. Doyal, 286 U.S. 123, 52 S.Ct. 546, 76 L.Ed. 1010; Willcuts v. Bunn, 282 U.S. 216, 51 S.Ct. 125, 75 L.Ed. 304, 71 A.L.R. 1260; Ohio v. Helvering, 292 U.S. 360, 54 S.Ct. 725, 78

L.Ed. 1307; Gillespie v. Oklahoma, 257 U. S. 501, 42 S.Ct. 171, 66 L.Ed. 338; Kentucky v. Dennison, 24 How. 66, 16 L.Ed. 717; Indian Motocycle Co. v. United States, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277.

We think the motion to dismiss should have been overruled, a preliminary injunction issued, an answer required to be filed, and the case heard upon the merits. Pending such hearing, an interlocutory injunction should issue restraining the defendant from attempting to collect the alleged taxes, debt, or penalties, except by due proceedings in a court of competent jurisdiction.

Reversed and remanded for further proceedings not inconsistent with this opinion.

HUTCHESON, Circuit Judge (dissenting).

As stated in the majority opinion, plaintiff's suit was "in equity, to restrain the collection of taxes upon the payment of admissions to athletic games." This being so, I think it inescapable that its maintenance was forbidden by section 3224, Rev. Stat., U.S.C.A., title 26, § 154 (now 26 U.S. C.A. § 1543), and that the District Judge was right in refusing the restraining order and dismissing the bill.

I cannot agree with the majority that there are any special circumstances in this case which, within Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, take it out of the operation of that statute. Especially can I not agree that appellant's situation with reference to the admissions taxes it collected from its patrons but did not return and pay over, prevents its being distrained for them.

The view of the majority that it is such a case proceeds, I think, from two erroneous assumptions. The first is that appellant is not, as to the admissions taxes collected, obligated to make returns as to, and account for and pay them over as a taxpayer. The second is that it may not pay them over and then sue to recover them back.

The statutes and regulations make it clear, I think, that appellant is, as to these admissions taxes collected, a taxpayer to the extent, at least, that as a taxpayer it is obligated to make returns, as a taxpayer it must pay over what it has collected, and as a taxpayer it is subject to be distrained for these collections, if it fails to pay over.

Section 502 (a) (c) and (d), 44 Stat. 93, U.S.C.A., title 26, § 873; section 1102 (a), 44 Stat. 112, U.S.C.A., title 26, § 1254; section 3176, U.S.C.Supp. VII, title 26, § 1524, 45 Stat. 878; section 3184, U.S.C.A., title 26, § 104 (now 26 U.S.C.A. § 1545), make provision for collectors of admissions taxes making returns of and paying the taxes they collect. They authorize the commissioner or a collector to make the return, in case the collector of admissions fails to do so. They authorize the commissioner to determine and assess all taxes on returns so made and further authorize the collector to collect these taxes as other taxes.

The Regulations, Art. 43, provide that every individual, corporation, or association receiving any taxable payment for admissions must collect the tax from the person making such payment at the time the payment is made. Article 54 provides that the person making payment of the taxes so collected may file claim for the refund of the taxes. There is a special provision that a club, which seeks refund of the amount of taxes collected by the club from its members, should make its claim so as to show that it does so with authority. These provisions leave no room for doubt, I think, that when the association collected these admissions it did so under the obligation to return them and pay them over. They leave no doubt that it has the right to file a claim for refund upon the ground it urges, that the tax is in effect a tax upon the state and therefore is not collectible, and that by the agreement on the tickets, its patrons have assigned the sums in controversy to it to have and keep them as its own, if the United States is not entitled to hold them. United States v. Johnston, 268 U.S. 220, 45 S.Ct. 496, 69 L.Ed. 925, cited by the majority as holding that appellant is not a taxpayer, does not, I think, so hold. The precise question was not before that court. It decided only that one who had collected admissions taxes had not collected them and did not hold them as agent of the United States so as to be guilty of embezzlement in not paying them over. It held that such a collector was a debtor, not a bailee; that the money for the tax was not identified at the outset, but was paid in with the price of the ticket, and nothing in the act required the collector to set up a separate fund in which the part due for admissions taxes should be put. On the question of taxpayer vel non, this that is said in the case, "reports are required only once a month, which does not

look as if the Government were dealing with these people otherwise than with others answerable for a tax," indicates that the collector was, rather than that he was not, regarded as a taxpayer. I think it clear that plaintiff having collected these sums, holds them prima facie at least as to the government, as tax moneys and is subject to pay them over, and upon failure to do so, to distrain for them as tax moneys, so that no injunction suit against their collection can be maintained.

I think it equally plain that appellant has an adequate remedy to pay and recover back.

Bunker Hill Country Club v. United States, 9 F.Supp. 52, and Congressional Country Club v. United States, 44 F.(2d) 266, are Court of Claims opinions in refund suits brought by country clubs to recover back taxes they had collected from their members and had remitted to the collector under statutes requiring them to do so. In both of these cases it was held, against the claim that the tax was unconstitutional, that the tax was a valid charge on the members; that plaintiffs having collected the amounts for their members were "liable for the tax." In both of them the refund was denied, not because plaintiffs had no standing to sue, but because the tax was valid.

Wourdack v. Becker (C.C.A.) 55 F.(2d) 840, does hold that one who, under no obligation or constraint to pay taxes assessed against others, had paid them, was a voluntary payee and could not recover them back. But see Moore Ice Cream Co. v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L. Ed. 1265, holding that taxes erroneously paid may be recovered back, though there was neither protest nor duress. See, also, our case of White v. Hopkins, 51 F.(2d) 159, holding that for the purpose of suing for a refund, a taxpayer is "one who pays a tax."

In Shannopin Country Club v. Heiner (D.C.) 2 F.(2d) 393, cited by the majority, a District Judge does hold that a country club showing only that it has paid sums paid it by its members as taxes on dues, does not make a case for refund. We need not say whether that case was correctly decided, for it is not authority for a case like this, where appellant suing for a refund shows on the face of its claim for it that the money it sued for was, if not due the government as taxes, its own money by agreement of ticket buyers.

I think it plain, then, that the District Judge was right in refusing the temporary injunction. Whether, as the majority hold, the dismissal of the bill was error, because the case should have been held for decision on the merits on its prayer for declaratory judgment, we need not determine, for the Federal Declaratory Act, Jud.Code § 274 (d), as amended by section 405, Revenue Act 1935 (28 U.S.C.A. § 400), does not now extend to controversies with respect to federal taxes.

Instead, then, of reversing the decree and remanding the cause for hearing on the merits, granting an interlocutory injunction meanwhile, I think we should have affirmed the decree throughout.

I therefore dissent.